for argument this morning. Case number 2018 98 Eastern Arkansas Rodney Reynolds versus Little Rock School District at all. Thank you, Mr Putman. Thank you, Your Honor. I am Bill Putman, attorney in Fayetteville. I'm representing the appellate here, Rodney Michael Reynolds. This this is a case for retaliation under the Rehabilitation Act 1973 section 504. Mr. Reynolds was employed by the Little Rock School District as a teacher, a special education teacher specifically, from 1998 until his forced retirement in the special education program in Little Rock. The court may be aware of this already, but briefly, an inclusion teacher is one who develops individual education plans for the purpose of including students in mainstream classes. Hence the concept being to include the special needs students with the other students in a regular classroom. And that contrasts to a resource teacher who often works with these students in a separate setting on an individual basis or in small groups in order to help them develop skills. And that's that's an important distinction in this case. I want to briefly talk about the chronology of the case. I've told you when Mr. Reynolds started, when he began working as a resource teacher, he worked at the same time in this district with his brother who's also a special education teacher. And whereas Mr. my client Rodney Michael Reynolds was an inclusion teacher during the vast majority of his time, his brother was a resource teacher. And my client, the appellant, was very familiar with some of the challenges that were faced by teachers who were trying to do that job. During the time, as is indicated in the complaint in the brief, Mr. Reynolds and his brother oftentimes during their tenure with the district was not in compliance with aspects of state and federal law. He mostly did this on an informal basis, but after observing little to no change, they began making more formal verbal complaints and documenting some of these complaints. This began in approximately 2011 and continued on into 2015. Prior to the 2015 school year, the state of Arkansas took over control of the Little Rock District and some things changed for Mr. Reynolds at that point in time. I should also point out that a year prior to this, in June of 2014, Mr. Reynolds' daughter was killed in a car accident. Following that, understandably, he suffered some fairly serious consequences. He was ultimately diagnosed with prolonged grief, anxiety, general anxiety disorder, and post-traumatic stress disorder. I want to ask you about that. So when you go to the charge on the EEOC, on that exact point, he talks about medical leave, he talks about an ADA claim, but nowhere in the charge is there a Rehabilitation Act reference at all or any reference to any of the conversations he had with school administrators. That is correct. I think there are a couple of explanations for that. The first is that Mr. Reynolds is not an attorney. It's my understanding he sought lay advice that advised him to fill out this charge of discrimination and to do it in the way that he did. I don't think that he understood the implications of checking the box for discrimination rather than retaliation. He may not have conceptualized it that way, but what he says in that brief comment period is consistent with what he has argued throughout the course of this litigation. I would say just as a plaintiff in a Rule 12b-6 motion is given a considerable amount of deference by the court, I don't think that Mr. Reynolds in this case ought to be held to a higher standard than a plaintiff would. Well, normally that's true, but there's a case that we have called, I'm trying to affirmative defense, where you can see from the complaint itself that the defense is established, and here not only was the charge I think quoted in full in the plaintiff's complaint, and I think you can see that, but as I recall it was even attached to the complaint as well, and so I don't know that we need to give the kind of deference. In fact, I would say that we don't need to give the kind of deference that we normally give when we know exactly what the complaint says or excuse me, the charge says in full. I agree with that, Your Honor. Yes, it was that that form was attached as an exhibit to the complaint. My point is that, you know, Mr. Reynolds was not legally sophisticated. He's filling out this charge very shortly after he was advised of his reassignment, and again, I would just say that to expect him to have the legal sophistication to fill out the form immaculately without what, in hindsight, I think we'd say were errors of judgment, would be a high standard. It's something we don't expect of lawyers. What's the best sentence? So I see at a reference in the charge to the ADA, I see a reference to restrictions on my disability. I see a reference to exacerbated my condition, which gets in all the grief and post-traumatic stress disorder. What I don't see, and I want to know if I'm missing something, what I reference to any conversations with anybody at the school about the Rehabilitation Act, about the disabled students, about any of that? Is there a sense in there that even remotely sort of bears on that? No, Your Honor, but I would say that this was filled out in August 19th of 2015. Most of the incidents that Mr. Reynolds cites in his complaint as incidents of retaliation occurred after that fact. The only thing that had occurred before he filled out that charge... Did you mean 2015? Yes. Yes, the the form I believe is dated August 19th of 2015, because he states on the form that the earliest act of discrimination was on August 10th of 2015, which is the date he was told he was going to be charged. And then the latest on August 18th, the day before he filled out that charge. The issue here is time-barred. Everything after August 19th is irrelevant to the statute of limitations issue. Well, I would say, Your Honor, that there are events that happened after that that would be relevant, and I would specifically ask the court to look at the phone conversation that Mr. Reynolds had with Jordan Eason, who's an employee of the Little Rock District, on December 11th of 2015. That's described in the complaint where Ms. Eason calls Mr. Reynolds, asks if he's coming back to work. He tells her that he's not because he's still suffering from his disability, not able to, at which point he tells... Counsel, that was four months after he'd worked. How can that have a nexus to the retaliation claim? It's a separate act of retaliation. But it's time-barred if it's separate. Well, Your Honor, I disagree with that analysis. I understand what the court is saying, but I don't think that when you have independent acts of retaliation that the I don't think it's unusual in retaliation or discrimination cases for a plaintiff to endure multiple actions, and the fact that you could point to an early point in time and say, well, you could have said you're retaliated against at that point, doesn't mean if a separate and independent act of retaliation occurs later that the statute of limitations cannot run from that date. There are cases, and Mr. Heller cited the Delaware State College versus Rick's case. That's one where a professor was denied tenure. He taught the rest of the school year and then was terminated, and the statute of limitations issue was, well, you have to go with the date that he was denied tenure because once that occurred, his termination was already written in time with the conversation that Mr. Reynolds had with Ms. Eason on December 11th. That's not a logical extension or inevitable consequence of him being reassigned in August. If you'll indulge me, let me ask one more question about exhaustion. Then I want to get into the Eason call in just a moment. But on exhaustion, was there any other? Are we missing a charge here? Was the charge? Is that the only charge? It's really a factual question. To my knowledge, it is the only charge. Yes. Okay. So then on Eason, I have sort of a different problem, I think, than Judge Loken on the Eason call, or maybe it's the same. But what I don't see are allegations tying the phone call to the retaliation. And so even if you were able to make sort of a constructive discharge argument, which is, I think, what you're doing by citing that case, I don't know that you've said enough to say that the November call was actually an act of retaliation, particularly since there's no allegations that Eason knew about any of the conversations that happened with other school administrators. I would certainly agree if I was to look at this complaint and consider how I would like for that section of it to be worded, I would do some things differently. I think what you have to do is look at the chronology of events, the context, the pattern that occurred over time. And then it's a logical consequence of that pattern of retaliatory conduct, that when you get to that point, Mr. Reynolds is offered the choice of involuntary retirement or termination. If I was to redraft this complaint, I would make that link between the actions that occurred during that phone call and the theory of retaliation more explicit. I do think, though, given the deferential 12B6 standard, I don't think it's a impermissible inferential leap to put that particular incident in the context of the complaint as a whole and say that the intent there was to label that as an act of retaliation. All right, counsel, in our Humphrey decision, a time-barred dismissal was affirmed under 12B6. Your reply brief pays no attention to that. Please distinguish it for me. Your Honor, I know I've read that case, and I'm just not recalling it offhand. I learned in contracts class with Professor Witte not to pretend I know something that I don't, so I'll have to confess my ignorance to the court. How about our Ricks case? The Ricks case, I think, is easily distinguishable because Ricks is a situation, and I'm a former college professor, so I'm familiar with this which meant that his employment as a tenure-track professor was going to end. He was advised, I'm not sure the exact date, but let's say August of that year, that he did not receive tenure. He knew at that point that he would be terminated following the end of that school year, so there was no other act that should occur that needed to occur other than the passage of time. He knew at the date that he was denied tenure that his employment had a termination, and in that sense, it was not appropriate to think that statute of limitations should run from the date that he actually stopped working. I would say in the case of Mr. Reynolds here, that wasn't inevitable. He was reassigned in August, but he was not told that he had a choice of termination or retirement or termination until December, and that's why I say I think that's a qualitatively different act and it would be appropriate to consider that the point at which the statute of limitations should be calculated. He couldn't have filed a retaliatory discharge claim in August for a constructive discharge, it hadn't happened. I have a minute and 40 left. If there aren't any other questions, I'd like to reserve that a little bit of time for rebuttal, if I could. Thank you, Mr. Hallener. May it please the court, Mr. Putman, I'm Chris Heller for the Little Rock School District. I'd like to begin with something I consider an important threshold issue in this case because Mr. Putman refers to the deferential 12B6 standard, and he employed the wrong standard throughout his brief. His brief relies five times in the opening brief and five times in the reply brief on a standard from the 1957 case of Conley against Gibson that was expressly overruled in Bell Atlantic Corp against Twombly in 2007. So all these references throughout both of Appellant's briefs talk about how the school district had some burden of proof to show there were no set of facts under which the plaintiff could make a case, and that's just a clearly overruled standard, and Bell Atlantic against Twombly says it's time, it has confused a lot of people over time, it's been wrong, and it's earned its place here under Twombly and Iqbal is some factual matter that rises to the level of plausibility, and that's just not here. There are a couple of things Judge Strass started with, the question of the EEOC charge, the point is, or an additional point is, there is nothing there. Mr. Reynolds simply checked the box that said the latest date of discrimination was August 18th, but there is no factual matter at all in that EEOC charge beyond August the 10th, and August the 10th is the date when Mr. Reynolds was informed by his principal that he was going to have a new position for the following year, and he says in the complaint that Judge Wilson let him file specifically to try and allege something that happened within the statute of limitations, he says there that something about this EEOC charge implies that something happened on August 18th, but there is nothing at all there, no factual matter at all. What about the November call? I talked to opposing counsel about the complaint, and I'm just wondering, that's alleged that that call happened, and I'm wondering if that gets you past that particular point. Judge Strass, I agree with your observation and your discussion with Mr. Putnam that there is absolutely no nexus between that call and any of Mr. Reynolds' alleged protected activity. According to the complaint, Ms. Eason, quote, demanded to know if he was coming back to work, and he answered no. It's undisputed that he had been off work since August 10th. He hadn't taught a class for the entire 2015-16 school year. There's no allegation in the complaint that Mr. Reynolds had ever spoken with Ms. Eason. There is no allegation that Ms. Eason knew anything at all about any protected activity that Mr. Reynolds engaged in, so there is no causal connection at all between that call and any alleged protected activity. And if we look at a case that's in our brief, Blomker against Sewell, this court held there that the elements of a cause of action are relevant, or at least are not irrelevant, to determining plausibility, that those elements can be a prism through which the court can assess the plausibility of a claim. Well, let me ask you this. I'm going to follow up on this, because I think the statute of limitations is sneaky difficult, or at least more difficult than the district court made it out to be, and I'll tell you why. So you have the November call from Eason, which is alleged in the complaint. I mean, the charge is a different issue. The charge is deficient in a variety of ways. Then you have the case, and I know nobody cited it, but it's a Supreme Court case called Green versus Brennan. And in Green versus Brennan, the Supreme Court said that when you're proceeding on a constructive discharge claim, and I know this is a constructive theory, constructive discharge theory and not a constructive discharge claim, the statute of limitations does not begin to run until the termination or resignation of the employee. And so I just wonder if that November date throws a monkey wrench, that the alleged November date threw a monkey wrench in the statute of limitations analysis, or at least makes it hard. Well, I can't argue that it makes it hard, but I can say this. I don't think it throws a monkey wrench in it, because when we're looking at the sufficiency of this complaint, Mr. Reynolds said that he was constructively discharged. Actually, the original complaint said in the spring of 2015, which is way before the statute of limitations, when Judge Wilson gave the appellant a chance to file an amended complaint, they added the allegations about the EEOC charge in the Easton call was actually in December. But he alleged, even in his final complaint, his amended complaint, that he was constructively discharged during the end of the 2014-2015 school year. And I've argued that the culminating event was on August 10th when his job was changed for reasons that he said were pretextual and false. And he never went back to work after that point. So my argument is, if he's been constructively discharged in August, he can't be constructively discharged again in December. And that's where those cases come in that Mr. Riggs was charged in the Supreme Court cases in Humphrey. If in fact, as Reynolds pleads, he was constructively discharged no later than August 10th, then eventually he was going to be out of a job. And just like the Riggs case where a professor was notified of tenure or the charting case where someone was notified of a decision to terminate, in Humphrey, I think, was a specific case the court asked about, where some tenants in a housing project were notified that their sewers were gonna be constructed a certain way. And that actually happened a long time afterwards, but the statute started running from the time they were notified. So if Mr. Reynolds was constructively discharged by August 10th, 2015, I don't see anything in the amended complaint that shows any actionable retaliation after that date. And I can say one more thing about the Eason phone call. One of the requirements, one of the pleading requirements in Twombly is that you show that something happened that actually shows an entitlement to relief, not just consistent with the possibility of entitlement to relief. So in this case, there's nothing about that phone call that's inconsistent with the idea that Mr. Reynolds had been off since August 10th. He told Ms. Eason he was not ready to come back. So it's the other perfectly plausible explanation is that he was out of time. He didn't have any more retirement, any more leave left, and he had to make a decision about what he was gonna do in the future. And he did choose retirement, and I would like to mention briefly, there are two cases cited in appellant's brief that I call retirement cases, Holston and Smith. And I would urge the court to also look at bets against Chertoff, which is at 578 F3rd 929, which is an eight circuit case in 2009. And that distinguishes the Smith case and really raises the question about whether retirement can be an adverse employment action. And in that case, Ms. Betts, I think the court described her as basically overworked and underpaid and distinguished Smith because in Smith, the reason there was an adverse employment action based on a retirement is because Smith's only other option, the risk he was taking was to be forced out with no benefits at all. Nothing like that happened here. There was no threat to Mr. Reynolds' retirement benefits. He could have retired or stayed on, gone back to work, and he would have had his retirement benefits whenever he retired. And finally, I wanna get back to a point that was raised with Mr. Pubman, the exhaustion argument, and I think it's pretty clear. Judge Wilson said at the Tidwell case, there's no debate that exhaustion of administrative remedies is required before you can file a Rehabilitation Act claim, and there's a Supreme Court case I cited called Jones against Bach. And that makes it clear that you can determine on the face of the complaint, even if something is technically an affirmative defense, it can form a basis for dismissal based on exhaustion. As the Supreme Court pointed out in Jones against Bach, statute of limitations is an affirmative defense, but it can still obviously provide a basis for dismissal. So the fact that something may be categorized as an affirmative defense doesn't preclude 12B6 dismissal. If the court has no further questions, I'll end my argument there. Thank you. Very good. Mr. Putnam for rebuttal. Two points quickly, Your Honor. First, regarding the 12B6 standard, as the court will note in my opening brief, I cite the Topshin case from 2014, the Ryan case from 2018, and a district court case, Ross Levy, Drake University in 2017. I may have inadvertently relied on a case that was overruled, but I don't think that that passage as a whole misstates law applicable to a 12B6 motion. Regardless of how it's termed, there is a deferential standard, and the court is obliged to give deference to the allegations and construe favorable inferences that are permissible in the plaintiff's favor. It's not intended to be a particularly onerous hurdle. I know that there are requirements, but I think part of my argument is that while the complaint was not especially artfully drafted, there's enough in there that Mr. Reynolds should not be kicked out of court at this very early stage of litigation. My second point, in terms of both the exhaustion argument and the argument that Mr. Reynolds was out of time, and that's why he was given the choice of retiring and being terminated. Both of the arguments that the appellee makes in this case are based on matters that are not in the record. In the appellee's response brief, the assertion is made that Eason's call didn't have any purpose other than to determine what Reynolds planned to do since he had run out of FOMA leave. That's not in the record anywhere. That is appellee's counsel testifying and supplementing the record in order to be able to make this argument. Likewise, we have an EEOC charge, we don't have any resolution of it. Exhaustion may be an issue, but we don't know that. We have to look outside the record for that. I would suggest that's not a proper basis for dismissal. And I thank the court. Thank you, counsel. The case has been thoroughly briefed and well argued, and we'll take it under advisement. Thank you.